**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Lynn Sevilla,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-23-00919-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Lori Lynn Sevilla's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint, (Doc. 1), and an Opening brief, (Doc. 10,) seeking judicial review of that denial. Defendant Commissioner of Social Security Administration (the "Commissioner") filed an Answering Brief, (Doc. 15), to which Plaintiff replied, (Doc. 18). The Court reviewed the parties' briefs, Administrative Record, (Doc. 8), and the Administrative Law Judge's ("ALJ") decision, (Doc. 8-3 at 19–32), and will reverse the ALJ's decision for the reasons addressed herein.

**I.   BACKGROUND**

On January 8, 2020, Plaintiff filed an Application for SSDI benefits, alleging a disability beginning on October 22, 2019. (*Id.* at 20.) Plaintiff's claim was initially denied in December 2020. (*Id.*) Upon reconsideration, Plaintiff's claim was again denied in December 2021. (*Id.*) A hearing was held before ALJ Carla L. Waters on June 3, 2022. (*Id.*) After considering the medical evidence and opinions, the ALJ determined that

Plaintiff suffered from severe impairments, including diabetes mellitus, obesity, right lateral epicondylitis, mild calcific tendinitis of the right rotator cuff, and osteoarthritis of the left knee, none of which met or medically equaled a listed impairment. (*Id.* at 23– 24.) Despite Plaintiff's impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform to sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with some modifications. (*Id.* at 25.) The ALJ denied Plaintiff's Application on August 2, 2022. (*Id.* at 33.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision (*Id.* at 2–4.)—making it the final decision of the Commissioner—and this appealed followed. (Doc. 1.)

## II.     LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    DISCUSSION

Plaintiff alleges that the ALJ erred on four bases: (1) concluding that Sevilla performed substantial gainful activity ("SGA") after October 22, 2019; (2) rejecting Sevilla's depression and anxiety as severe impairments; (3) providing insufficient reasons to reject Dr. Robert Gordon's opinions; and (4) concluding that Sevilla had past relevant work as a "statement clerk." (*See* Doc. 10.)

### A.   Plaintiff's SGA after October 2019

Plaintiff states that she stopped working in October 2019, but received paid leave, FMLA, and disability through October 22, 2020. (*Id.*) Consequently, Plaintiff argues that the ALJ's determination that she performed SGA after October 2019 is error. (*Id.*) In response, the Commissioner argues that Plaintiff engaged in SGA until October 2020, which is evidenced by Plaintiff's work history report showing employment in October 29, 2020, Plaintiff's testimony that she believed her last date of employment was in October 2020, and inconsistent reports to several physicians regarding her paid leave and ultimate separation. (Doc. 15 at 6; Doc. 8-7 at 23; Doc. 8-9 at 115; Doc. 8-10 at 4.) In reply, Plaintiff contends that income from March until her separation from employment was from paid leave, not income related to her productivity. (Doc. 18 at 2.); 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2).

"Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has earned less than a certain minimum amount, then the ALJ will generally conclude that the claimant has not engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3). If, however, the claimant has earned more than that minimum amount, the ALJ will generally conclude the claimant has engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). The ALJ considers other information in addition to the claimant's earnings if evidence suggests that the claimant is engaging in substantial gainful activity or that the claimant controls the amount and time of wage payment. 20 C.F.R. §§ 404.1574(b)(3)(ii). This other information includes whether the claimant's work compares to that of unimpaired people in the same or similar occupations—considering the time, energy, skill, and responsibility involved in the work. *Id.* The ALJ also determines if the claimant clearly does not receive compensation equal to the value of the work, according to the pay scales in the local community. *See* 20 C.F.R. §§ 404.1574(b)(3)(ii), 416.974(b)(3)(ii).

The ALJ found that Plaintiff worked at SGA levels through December 2020. (Doc.

8-3 at 22.) The ALJ reasoned that Plaintiff's own statement that her employment ended in December 2020, paired with her 2019 earnings of $34,668.77 and 2020 earnings of $36,148.89, supported the tribunal's finding. (Doc. 8-3 at 22; 8-6 at 8; Doc. 8-7 at 42.) Plaintiff expressed uncertainty as to what portion of her 2020 income was derived from paid leave or short-term disability. (Doc. 8-3 at 46–47.) Additionally, Plaintiff testified that she had not worked since October 2020, but shortly thereafter admitted that she worked as a "financial crime specialist for Wells Fargo" from "January 17, 2020 to December 30, 2020." (*Id.*) Plaintiff does not point to relevant evidence on the record to clarify her employment status or source of earnings before her ultimate termination. (*See* Doc. 10 at 12.) Thus, the Court agrees with the Commissioner that the ALJ properly relied on Plaintiff's earnings and own statements to determine that she worked through December 2020. (Doc. 15 at 7); 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1) ("We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings."); *see also Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

**B. Non-Severe Anxiety and Depression Finding**

Plaintiff argues that the ALJ erred in finding that her anxiety and depression as non-severe impairments. (Doc. 10 at 13.) In response, the Commissioner contends that the ALJ, having considered the entire record, properly determined that Plaintiff's anxiety and depression were non-severe mild limitations. (Doc. 15 at 9–10.)

The mere existence of a medically determinable impairment does not mean that it qualifies as severe under the regulations. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). A mental impairment is "severe" if it "significantly limits" the claimant's "mental ability to perform basic work activities." 20 C.F.R. §§ 404.1521(c), 404.1522(a), 416.920(c), 416.922(a). In general, the claimant must prove the physical or mental impairment by providing relevant evidence. *See* 20 C.F.R. §§ 404.1512(a); 416.912(a).

An impairment or combination of impairments can be found "not severe" only if the medical evidence clearly establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  SSR 85-28, 1985 WL 56856, at *3 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are Not Severe); *see also Webb*, 433 F.3d at 686; *Smolen*, 80 F.3d at 1290; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

> Determining whether an impairment is not severe requires:
>
> A careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.

SSR 85-28, 1985 WL 56856, at *4.  Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1522, 416.922.

The ALJ began by weighing reports by Dr. Abreu against Plaintiff's reported symptoms.  (Doc. 8-3 at 23.)  During Dr. Abreu's examination, Plaintiff reported feeling consistent anger and worry, but had issues describing her self-diagnosed bipolar disorder.  (*Id.*; Ex. 8F.)  Plaintiff also reported that she drove, managed her finances, shopped, socially relied on friends, and watched her granddaughter.  (Doc. 8-3 at 23; Doc. 8-9 at 114–17.)  Moreover, Plaintiff reported that her symptoms coalesced approximately twenty years prior, but she had remained employed in banking for approximately thirty years.  (Doc 8-3 at 23–24; Doc. 8-9 at 114–17.)  Dr. Abreu ultimately concluded that "[h]er symptoms may cause some distractedness at work, problems with consistent attendance, and/or impairment in socially appropriate behavior.  That said, there is no clear evidence that mental health symptoms caused significant work impairment in the past."  (Doc. 8-3

at 23; Doc. 8-9 at 114–17.)

Considering Dr. Abreu's report, the ALJ evaluated the factors of mental functioning set out in 20 C.F.R., Part 404, Subpart P, Appendix 1 to determine severity. (Doc. 8-3 at 24.) Plaintiff argues that the ALJ erroneously used these factors to make a non-severe finding because these factors do not apply to that determination. (Doc. 10 at 14.) The Commissioner posits that Plaintiff misunderstands the standard used to determine impairment severity, and the ALJ used the proper method to make the finding. (*Id.* at 10.) The Court agrees with the Commissioner because an ALJ must analyze the severity of the alleged impairment at this step in the analysis. *See* 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28, 1985 WL 56856, at *4; *Yuckert*, 841 F.2d at 306. Based on Dr. Abreu's reports, other treatment reports on record, and Plaintiff's statements, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information, but did have a mild limitation interacting with others, concentrating, and adapting or managing herself. (Doc. 8-3 at 24.) The ALJ also highlighted that Plaintiff is already treating her anxiety and depression with therapy and several types of medication. (*Id.* at 23.) In light of Plaintiff's contentions, the record does not establish that Plaintiff's mental impairments would cause more than mild limitations in any of the functional areas that would preclude Plaintiff from doing basic work activities. Therefore, the Court agrees with the ALJ's analysis and findings.

**C. Dr. Gordon's Medical Opinion**

Plaintiff argues that the ALJ failed to provide sufficient reasons to reject Dr. Gordon's medical opinion regarding Plaintiff's need to use a walker to ambulate. (Doc. 10 at 13, 16–21.) In response, the Commissioner argues that the ALJ did not err because she sufficiently indicated that Dr. Gordon's multiple assessments of Plaintiff were inconsistent and did not accord with other medical evidence on the record. (Doc. 15 at 14.)

Plaintiff filed her claim in January 2020. For claims filed after March 27, 2017, the rule that previously gave deference to opinions from treating physicians has been rescinded. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416).  The changes in regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting and examining [or treating] doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  However, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.  The revised regulations require that the ALJ explain only how she considered the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c; *Woods*, 32 F.4th at 791.

Here, the ALJ evaluated Plaintiff's claim using, in part, the medical opinions of four doctors: Dr. Cazares, Dr. Gordan, Dr. Simpson, and Dr. Abreu.  (Doc. 8-3 at 27–32.)  The ALJ also relied on notes from several orthopedic clinic appointments.  (*Id.* at 28–29.)  The ALJ adopted the opinion of Dr. Simpson, finding that Plaintiff did not need a walker because the "physical consultative examination done on November 8, 2021, did not corroborate the medical necessity."  (*Id.* at 32.)

Unlike Dr. Simpson, Dr. Gordon opined at the November 2020 assessment that Plaintiff required a walker, and she could not climb or work in certain environmental conditions.  (*Id.* at 31.)  At the November 2021 assessment, Dr. Gordon opined that Plaintiff needed a walker and environmental accommodations, but that she could perform light work and occasionally climb, balance, stoop, kneel, crouch, and crawl.  (*Id.*)  The ALJ discounted both evaluations.  First, the ALJ noted that the walker was not prescribed as a medical necessity but was dispensed to reduce knee pain after Plaintiff suffered an injury in October 2019.  (*Id.* at 30.)  Second, although Plaintiff went to visits with Dr. Gordon and Dr. Abreu using the walker, use of the walker was not noted in treatment records from Banner Orthopedics or Retinal Consultants.  (*Id.*)  According to the ALJ, inconsistencies in Dr. Gordon's assessment reports of Plaintiff rendered his opinions unpersuasive.  The ALJ then adopted Dr. Simpson's opinion, which found that Dr. Gordon's assessment did not indicate that a walker was medically necessary.  (*Id.* at 32.)

Plaintiff argues that Dr. Simpson's opinion did not constitute substantial evidence for rejecting Dr. Gordon's opinion. (Doc. 10 at 19.) The Court agrees. Although the ALJ did not need to give "specific and legitimate reasons" to reject Dr. Gordon's opinion, the ALJ cannot summarily reject it "without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Dr. Simpson merely stated he "would assess alleged physical limitations/Symptoms not consistent, find the 11/08/2021 pCE MSO inconsistent with stated medical necessity of walker." (Doc. 8-10 at 12.) Dr. Simpson's "opinion" is a short two-paragraph document recounting Plaintiff's impairments and, in a single sentence, dismissing the assessment that Plaintiff required a walker. (*Id.*) Thus, the ALJ's reliance on Dr. Simpson's report to discount Dr. Gordon's opinion does not pass muster. (Doc. 8-3 at 32.) The Court is also unconvinced that the assumed absence of the walker at some medical appointments conclusively establishes that it is medically unnecessary. (*Id.* at 30.) The Ninth Circuit has explained that "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record." *Orn*, 495 F.3d at 634. Therefore, the Court finds that the ALJ erred by not providing an explanation supported by substantial evidence to reject Dr. Gordon's opinion. *Woods*, 32 F.4th at 792.[1]

IV.   **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** reversing the August 2, 2022 decision of the ALJ.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for rehearing.

…

---

[1] Because the ALJ erred when considering the medical opinions of record, the Court need not reach whether the ALJ determined the correct RFC. Additionally, Plaintiff has not invoked the credit-as-true rule in this proceeding. As a result, the Court will remand for further proceedings rather than remand for a calculation of benefits. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cit. 2017).

1      **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment
2  consistent with this Order and close this case.
3      Dated this 26th day of September, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge

- 9 -